## Commonwealth *v.* Margie, Appellant.

Argued March 14, 1949. Before HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (RHODES, P. J. and ROSS, J., absent).

*J. B. F. Rinehart,* for appellant.

*W. Bertram Waychoff,* District Attorney, for appellee.

OPINION BY FINE, J., July 15, 1949:

Nicholas Margie was convicted on two counts charging him with arson and burning with intent to defraud an insurer,[1] and was sentenced to three to ten years imprisonment. He appealed contending that the evidence is insufficient to support his conviction; that the court below erred in dismissing (1) his demurrer to the evidence and (2) his motions in arrest of judgment and for a new trial.

On August 13, 1947, at about 7:30 a.m. a fire occurred in the one-story home of appellant in the Braden Plan, Jefferson Township, Greene County. The fire was first observed by two neighbors, Belski and Robertson, who ran to the Margie home and attempted to gain entrance to extinguish the fire. Belski testified that he tried to get in but found all the doors and windows locked. He then called Margie. Appellant, who was "on the bridge" some distance away, answered Belski and said "Nobody is home, Joe . . . I am going for the fire

---

[1] Act of 1939, P. L. 872, §§905, 906, 18 PS §§4905, 4906.

truck." Belski and Robertson then gained entrance by breaking the screen of a cellar window. They found that the fire emanated from a hallway on the ground floor; that heavy smoke which poured from that area impeded their efforts until they used a garden hose on the area of the fire. Shortly thereafter, the Fredericktown Fire Department arrived and the fire was extinguished.

In the hallway in front of the bathroom Belski testified that, "There was a chair and . . . this chair it was all built up with kindling wood, it looked like a body sitting there and in back of this chair there was a jug"; that the smoke had "an awful odor" but he could not say whether it smelled like gasoline. Robertson corroborated Belski in many material respects. He testified that the wall plaster had been chopped off the wall right near the chair in the hallway; that he observed a jug, identified by him at trial, which at the time of the fire was half full of a transparent liquid; that the smoke was heavy and black and had a very peculiar and unusual odor. John E. Gettier, assistant fire marshal of the Pennsylvania State Police, stated that he arrived at the home about five hours after the fire was extinguished. His investigation revealed that the living room rug was scorched; that there was a strong odor of an inflammable liquid; that kindling and wood were lying on the floor around a broken chair in the hallway near the bathroom where the center of the fire was located. He identified the jug and other items of evidence found on the premises. Other corroborating evidence was given by additional witnesses to the effect that the chair, kindling wood and the jug were placed under a trap door leading to the attic where pieces of underclothing, soaked with an oily liquid, were twisted like a rope across the attic floor. This twisted underclothing led to a corner of the attic where a cardboard box and kindling wood were placed.

J. C. Watson, a member of the Fredericktown Volunteer Fire Company, testified that he examined the jug identified by Belski which was located near the hallway; that he smelled the contents thereof and identified it as gasoline. Alvie Tennelli, assistant fire chief, testified to the same effect. Tennelli and Robert McClelland, a fireman, offered corroborating evidence of the aforementioned preparations in the attic.

There was evidence that defendant had purchased his home in 1943 for $2,900.00; that it was insured for $4,500.00, a sum in excess of the loan appraisal value but slightly less than its replacement value; that the modest furnishings for the small home were insured in the amount of $4,000.00; and that defendant was in financial difficulties, as the mortgage on the premises was about to be foreclosed. The day before the fire, his wife and children went to Marianna, Pennsylvania, and took most of their clothes with them. Defendant was the only person in the house between the time he entered upon his return from work, when he noticed nothing unusual in the home, and later in the morning when the fire was detected. He testified that he returned home from work about 2:00 a.m.; that he sat down on the studio couch in the living room to read the paper and fell asleep shortly thereafter; that when he was awakened by flames striking him he started to run out of the house to call the fire department but fell down the cellar steps and then crawled out of a cellar window, leaving the house entirely locked. Evidence was introduced to show that the life of the defendant was threatened, for the purpose of developing an inference that the arson was committed by a person or persons other than Margie.

The conviction of appellant rests entirely upon circumstantial evidence—the usual situation in arson cases. The evidence of the Commonwealth was sufficient to warrant the conclusion that the defendant was in ex-

clusive control of the building and that the fire was unquestionably of incendiary origin, which latter fact must be conceded from the nature of the defense. The prosecution submitted ample proof from which the guilt of the defendant could be reasonably and satisfactorily drawn. It was not incumbent upon the Commonwealth to produce direct evidence that defendant started the fire; it was required to show circumstances reasonably and naturally warranting an inference of guilt and of such "volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt": *Commonwealth v. Marino,* 142 Pa. Superior Ct. 327, 334, 16 A. 2d 314.

Defendant contends that where, as here, the Commonwealth's case rests upon circumstantial evidence alone ". . . the requirements of proof, necessary to convict, are qualified to place an additional burden upon the Commonwealth to the extent that the circumstances must be such as to exclude to a moral certainty every hypothesis but that of guilt." *Commonwealth v. Byers,* 45 Pa. Superior Ct. 37. In *Commonwealth v. Marino,* supra, KELLER, P. J. said, page 334: "We respectfully suggest, bearing in mind the natural disposition of jurors to entertain a reasonable doubt of the accused's guilt more readily where the evidence is wholly circumstantial than where it is accompanied by direct evidence of guilt, that the rule [pronounced in the *Byers* case] might well be modified, with fairness to both the Commonwealth and the accused, so as to read : *When a crime charged is sought to be sustained wholly by circumstantial evidence the circumstances proved should be such as reasonably and naturally to justify an inference of guilt of the accused, and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt."* (Emphasis added.) More recently in the case of *Commonwealth v. DePetro,* 154 Pa. Superior

Ct. 535, 543, 36 A. 2d 229, BALDRIGE, J., in considering the *Byers* and *Marino* cases, supra, said: "That modification has been apparently approved by the Supreme Court [in] Commonwealth v. Libonati, 346 Pa. 504, 508, 31 A. 2d 95. See, also, Commonwealth v. DuBoise, 269 Pa. 169, 174, 112 A. 461; Commonwealth v. Giovanetti, 341 Pa. 345, 359, 19 A. 2d 119; Commonwealth v. Johnson, 153 Pa. Superior Ct. 437, 34 A. 2d 170. In the recent case of Commonwealth v. Meyers, 154 Pa. Superior Ct. 8, 11, 34 A. 2d 916, Judge RENO, the opinion writer, said: '. . . the burden resting upon the Commonwealth to prove its case beyond a reasonable doubt does not require it to demonstrate the utter impossibility of innocence. . . . Circumstantial evidence is, in the abstract, nearly, although perhaps not altogether, as strong as positive evidence; in the concrete it may be infinitely stronger.' Commonwealth v. Harman, 4 Pa. 269, 271. The *Harman* case was cited with approval in Commonwealth v. Karmendi, 328 Pa. 321, 195 A. 62, wherein it is stated pp. 333, 334: 'There is no general rule to determine the quantity of circumstantial evidence necessary to overcome the presumption of innocence and carry the case to the jury. This must be weighed by the trial judge.' "

The case was fairly tried and submitted to the jury on instructions most favorable to appellant. The circumstantial evidence of appellant's guilt is as strong as, if not stronger than, the evidence produced in *Commonwealth v. Cucciardo*, 118 Pa. Superior Ct. 149, 179 A. 784. Cf. *Commonwealth v. Perdikakis*, 113 Pa. Superior Ct. 320, 173 A. 472; *Commonwealth v. Buti*, 113 Pa. Superior Ct. 385, 173 A. 890.

Judgment affirmed.